UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| GEORGE COCHRAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:25-cv-00036-SRC |
| | ) | |
| WARDEN, MOBERLY CORRECTIONAL | ) | |
| CENTER and R. ZAMORA, | ) | |
| | ) | |
| Defendants. | ) | |

**Memorandum and Order**

Missouri prisoner George Cochran claims the Moberly Correctional Center warden and nursing director violated his Eighth Amendment right to adequate medical care. He paid the $405 filing fee in full, so the Court reviews the complaint in accordance with 28 U.S.C. § 1915A. For the reasons explained below, the Court dismisses this action pursuant to section 1915A(b)(1) and denies as moot Cochran's motion to appoint counsel and motion for injunctive relief.

**I.      Background**

**A.      Cochran's Civil Action Complaint**

Cochran is incarcerated in the Moberly Correctional Center. Doc. 1 at 2 (The Court cites to page numbers as assigned by CM/ECF.). He filed a complaint of his own creation pursuant to 42 U.S.C. § 1983 against "Warden, Moberly Correctional Center" and R. Zamora, R.N., the Center's Director of Nursing. *Id.* at 1. Cochran sues the warden in his official capacity but does not specify the capacity in which he sues Zamora. *Id.* at 2.

Cochran sets forth his claims for relief in a section he titled "Statement of Facts." *Id.* at 4. He writes:

> ISSUE ONE:  Failure of the MEDICAL DEPARTMENT here at the MOBERLY CORRECTIONAL CENTER to provide proper MEDICAL SUPPLIES, as [prescribed] by a DOCTOR - FEEDING TUBES, in[]which I am in need to properly feed myself - MEDICAL FEEDING Syringes.
>
> ISSUE TWO:  Failure of the MEDICAL DEPARTMENT here at the MOBERLY CORRECTIONAL CENTER to provide [prescribed] medication (PRILOSEC). This medication was prescribed by Dr. Dooley.
>
> ISSUE THREE:  Failure of the MEDICAL DEPARTMENT here at the Moberly Correctional Center to adhere to a Doctor[']s request, Dr. Dooley, upon known, and scheduled appointment, to examine to plan my next CANCER TREATMENT PROCEDURE - BECAUSE MY CANCER HAS GOTTEN WORSE AND IS SPREADING.
>
> ISSUE FOUR:  Failure of the MEDICAL DEPARTMENT here at the MOBERLY CORRECTIONAL CENTER for the necessary [accommodations] of my MEDICAL SUPPLIES, STERILE WATER, FEEDING SYRINGES, etc.[]
>
> ISSUE FIVE:  Failure of the MEDICAL DEPARTMENT here at the MOBERLY CORRECTIONAL CENTER to provide [CHLORHEXIDINE GLUE] that has been prescribed to me by a doctor.

*Id*. (When quoting the complaint, the Court includes emphasis from the original.).

> Cochran continues:
>
> Since my DIAGNOSIS OF CANCER, and it[]s treatment, THE MEDICAL DEPARTMENT has been showing DELIBERATE INDIFFERENCE, NEGLIGENCE, and CRUEL AND UNUSUAL PUNISHMENT that has caused THE UNNECESSARY AND CRUEL INFLICTION OF PAIN AND SUFFERING.

*Id.*  He claims to have a serious medical need that "if left unattended will pose a great[,]

substantial risk of serious harm, even DEATH."  *Id.*  He writes:

> MEDICAL MISTREATMENT by PRISON OFFICIALS and PRISON MEDICAL STAFF is a violation of the EIGHTH AMENDMENT of the United States Constitution, as well as THE CONSTITUTION OF MISSOURI . . . .  In the 'MEDICAL MISTREATMENT CONTEXT,' the appropriate level of [CULPABILITY] of STATE OFFICIALS, PRISON MEDICAL STAFF, is that of DELIBERATE INDIFFERENCE."

*Id.* at 5.  Cochran concludes:  "THE DEPRIVATION of Medical Needs[] violates George

Cochran[']s[] Constitutional Rights, . . . []which was caused by the ACTIONS of all

2

DEFENDANT[]S under STATE LAW.  MEDICAL MISTREATMENT."  *Id.*  In setting

forth his claims, Cochran does not mention either Defendant by name or specific role,

instead making allegations against unspecified prison staff.

Cochran then describes the prospective injunctive relief he seeks, which includes a

permanent injunction requiring the Defendants to cease their "unlawful actions" and deliberate

indifference, and refrain from retaliation.  *Id.* at 6.  He seeks an injunction ordering the prison to

provide him all prescribed supplies, medications, and treatments and maintain a supply of all

medications and supplies in storage for him.  *Id.* at 6.  He then requests an injunction that the

Defendants, "as well as the DEPARTMENT OF CORRECTIONS – MEDICAL

ADMINISTRATION" cease the "ENFORCEMENT OF ILLEGAL CONFINEMENT" that

violates unspecified federal law.  *Id.*  He also seeks a declaration that Defendants' actions violate

his constitutional rights.  *Id.*  He states he does not seek monetary relief "at this time."  *Id.* at 7.

Cochran also attached to his complaint a 23-page document—which the Court calls the

"Exhibit" and considers part of the Complaint, *see* Fed. R. Civ. P. 10(c)—titled "Exhaustion of

all Administrative Remedies in Accordance with **The Prisoner Litigation Reform Act** 42

U.S.C.A. § 1997(e)."  Doc. 1-1 at 1.  The Exhibit contains copies of the internal-grievance-

procedure documents for various matters.  The following is a summary of the Exhibit.

In the April 17, 2024 Informal Resolution Request ("IRR"), Cochran complained that the

medical department showed "[d]eliberate indifference by not having the correct syringes for [his]

tube feeding."  *Id.* at 2.  In a response dated July 18, 2024, Zamora explained that a smaller

syringe was used while the larger syringe was out of stock.  *Id.* at 3.  She noted that Cochran

never missed a tube feeding and was given the requested syringe when it became available.  *Id.*

Cochran then filed a grievance and a grievance appeal, *id.* at 4–5, to which non-party prison

3

officials responded on February 5, 2025, *id.* at 6.  Their response notes that Cochran's feeding tube was replaced in the emergency room, and Cochran was given the smaller syringes to use until the new ones arrived, which ensured Cochran received tube feedings.  *Id.*  This IRR appears to correlate with the complaint's "ISSUE ONE."  Doc. 1 at 1.

In his April 22, 2024 IRR, Cochran claimed he was subjected to "[m]edical neglect and deliberate indifference" when he was not provided Prilosec, which Dr. Dooley prescribed.  *Id.* at 7.  He claims he requested a refill of Prilosec on April 4, 2024, and had not received it as of April 21, 2024.  *Id.*  On July 18, 2024, Zamora responded, noting that Cochran's medication expired on March 4, 2024; his health-services request was received on April 7, 2024; the provider renewed the medication on April 17, 2024; and the medication was given to him on April 23, 2024.  *Id.* at 8.

Cochran filed a grievance and a grievance appeal, *id.* at 9–10, to which non-party prison officials responded on February 7, 2025, *id.* at 11.  The response confirmed that the medication was ordered on April 17, 2024 and given to Cochran on April 23, 2024, and that Cochran's record showed that he received care and treatment for his medical issues.  *Id.*  This IRR appears to correlate with the complaint's "ISSUE TWO."  Doc. 1 at 1.

In his April 24, 2024 IRR, Cochran claimed he suffered "[m]edical neglect and deliberate indifference" because he was not taken to his "cancer doctor" when the doctor wanted him back within a month of February 8, 2024.  *Id.* at 12.  Cochran wrote that the doctor intended to plan his next procedure, and that the area of concern was worse and had grown.  *Id.*  In a response dated July 18, 2024, Zamora noted that Cochran saw the provider in question—an ENT—on February 8, 2024.  *Id.* at 13.  While the ENT recommended that Cochran return in a month, Cochran went to the follow-up appointment on April 25, 2024.  *Id.*  Cochran filed a grievance

4

and grievance appeal, *id.* at 14–15, to which non-party prison officials responded on January 22, 2025, *id.* at 16.  They acknowledged Cochran's February 8 ENT visit, and pointed out that Cochran saw an on-site medical treatment provider on February 27, 2024, who reviewed the ENT's plan and referred Cochran for the follow-up visit.  *Id.*  The visit was approved and then scheduled for April 25, 2024.  *Id.*  At the visit, the ENT did not perform or plan any additional cancer treatment, and decided to continue monitoring Cochran's condition and see him again in two to three months.  *Id.*  The response also stated that the prison has no control over the scheduling availability of outside providers.  *Id.*  This IRR appears to correlate with the complaint's "ISSUE THREE."  Doc. 1 at 1.

In his May 9, 2024 IRR, Cochran once again alleged "[i]ntentional medical neglect and deliberate indifference" for when he was told he would stop receiving sterile water for his tube feeding, despite having a doctor's order for it.  *Id.* at 17.  In a response dated July 18, 2024, Zamora noted that a nurse practitioner ordered sterile water for Cochran's tube feedings on May 16, 2024, and Cochran began receiving it.  *Id.* at 18.  And while supportive documentation for a prior order in 2021 could not be found, Zamora stated that an order was placed on December 2, 2020 for free water flushes.  *Id.*  Cochran then filed a grievance and grievance appeal, *id.* at 19–20, to which non-party prison officials responded on February 3, 2025, *id.* at 21.  They wrote that a new weekly order for sterile water was entered on May 16, 2024, and that medical professionals used their independent medical judgment to make decisions about Cochran's treatment.  *Id.*  This IRR appears to correlate with the complaint's "ISSUE FOUR."  Doc. 1 at 1.

Finally, in his November 5, 2024 IRR, Cochran claimed he suffered "[m]edical neglect and deliberate indifference" because he did not receive a medication he calls "Chlorhexidine Glue."  *Id.* at 22.  Zamora responded on November 22, 2024 and stated that Cochran ran out of

5

the medication on September 30, 2024, the provider renewed the medication on October 8, 2024, and Cochran received a refill on November 15, 2024.  *Id.* at 23.  This IRR appears to correlate with the complaint's "ISSUE FIVE."  Doc. 1 at 1.

### B.    Additional assertions

Cochran filed a series of additional documents on October 2, 2025, December 2, 2025, and December 23, 2025.  Docs. 10–12.  Because no Defendant has been served in this case and would therefore not be prejudiced, the Court construes Cochran's supplemental filings as amendments to his complaint, and considers their allegations alongside those in his complaint.  *See* Fed. R. Civ. P. 15(a); *Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir. 2000) (noting courts' "liberal viewpoint towards leave to amend").

In his October 2 filing, Cochran claims he went without Chlorhexidine for 2 weeks.  Doc. 10.  He also describes two occasions of experiencing bleeding and drainage around his feeding tube and claims he had to wait a few hours each time for a nurse to apply ointment.  *Id.*  Cochran also complains that he had not received a follow-up visit with his "'Cancer' Doctor at MU" within 3 months of July 3, 2025.  *Id.*  However, in his December 2, 2025 filing, he states that he saw his doctor again on October 9, 2025.  Doc. 11.

Also in his December 2 filing, Cochran claims that the process of scheduling a six-week follow-up visit with Dr. Dooley had not started, and states he had to visit the emergency room on November 25, 2025, because his feeding tube clogged.  *Id.*  He states that this would not have happened if he had seen Dr. Dooley in a timely manner.  *See id.*  Cochran included a grievance-appeal response he received from a non-party nurse and doctor acknowledging that Cochran had to wait from September 30, 2024 to November 8, 2024 to receive a medication refill, and assuring him that they would review the renewal process.  *See* doc. 11-1 at 4.  Finally, in his

December 23, 2025 filing, Cochran states that he initiated a prison grievance to complain about the manner in which he is restrained during transport to medical appointments, and to request accommodation.  Doc. 12.

## II.     Standard

This Court must review "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  Cochran is a "prisoner" as defined in section 1915A(c), and he seeks redress from two employees of a governmental entity.  This Court must therefore review Cochran's complaint and dismiss it if it "is frivolous, malicious, or fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915A(b).

To sufficiently state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A plaintiff must demonstrate a plausible claim for relief, which requires more than a "mere possibility of misconduct."  *Id.* at 679.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).  To determine whether a complaint states a plausible claim for relief, the Court must engage in "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679 (citation omitted).  In doing so, the Court must "accept as true the facts alleged, but not legal conclusions."  *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678).

When reviewing a self-represented person's complaint under section 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984) (per curiam), and liberally construes the complaint, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). A "liberal construction" means that, if the Court can discern "the essence of an allegation," the "[C]ourt should construe the complaint in a way that permits" the Court to consider the claim within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). Even so, self-represented plaintiffs must allege facts that, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). The Court need not assume unalleged facts. *Stone*, 364 F.3d at 914–15 (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff). Nor must it interpret procedural rules to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## III.     Discussion

Having carefully reviewed and considered Cochran's Civil Action Complaint, Exhibit, and later-filed materials, the Court dismisses his case. Cochran does not plead a plausible claim because he fails to show a constitutional violation. *See Iqbal*, 556 U.S. at 678. And although Cochran alleges "illegal confinement," he provides no factual detail regarding the nature of his confinement or reasons why it is illegal, doc. 1 at 6. *See Iqbal* , 556 U.S. at 678.

### A.     The capacity in which Cochran sues Zamora

Cochran specifies that he sues the warden in his official capacity, but he did not specify the capacity in which he sues Zamora. *See* doc. 1 at 2. Whether Cochran *could* sue Zamora in an individual capacity for prospective injunctive relief, as he seeks to do, doc. 1 at 6–7, is

unclear. *See Strutton v. Hacker*, No. 4:23-cv-01134-SPM, 2025 WL 26682, at \*5 (E.D. Mo. Jan. 3, 2025) (noting that the court "has found no Eighth Circuit cases addressing the issue of whether the plaintiff in a § 1983 case can obtain injunctive relief from a defendant in his or her individual capacity," but that "cases from other courts support [the] argument [that they can't]" (collecting cases)). The Court need not decide this question, because whether Cochran sues Zamora in an official or individual capacity, Cochran still fails to state a claim.

**B.     Eighth Amendment claims against the warden and Zamora in their official capacities**

The Court first addresses Cochran's official-capacity claims against the warden and Zamora. Cochran seeks prospective injunctive relief, doc. 1 at 6–7, which does not violate the Eleventh Amendment, *see Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) ("[S]tate officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment."). Cochran's official-capacity suit "is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt,* 469 U.S. 464, 471 (1985)). "There are two requirements to" prevail on a suit seeking prospective relief against state officials. *Filyaw v. Corsi*, 150 F.4th 936, 941 (8th Cir. 2025). "First, the plaintiff must allege an ongoing violation of federal law. Second, the plaintiff must be seeking prospective relief." *Id.* (cleaned up).

Having carefully reviewed and liberally construed Cochran's Civil Action Complaint, Exhibit, and additional filings, the Court finds they fail to show an ongoing constitutional violation. *See* docs. 1, 1-1, 10–12. Cochran bases his claims on the Eighth Amendment, which "requires state prison officials to provide inmates with needed medical care." *Dantzler v. Baldwin*, 133 F.4th 833, 843 (8th Cir. 2025) (quoting *Cullor v. Baldwin*, 830 F.3d 830, 836 (8th Cir. 2016)). Deliberate indifference to an inmate's serious medical needs constitutes the

9

"unnecessary and wanton infliction of pain."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  A plaintiff can establish deliberate indifference by showing that prison officials intentionally delayed or denied access to medical care.  *Dantzler*, 133 F.4th at 846 (quoting *Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2015)); *see also Estelle*, 429 U.S. at 104–05.

A deliberate indifference claim has "both an objective and a subjective component." *Dantzler*, 133 F.4th at 843 (quoting *Cheeks v. Belmar*, 80 F.4th 872, 876 (8th Cir. 2023)).  A plaintiff must show he had "(1) an objectively serious medical need, and (2) that the defendant knew of and disregarded that need."  *Id.* (quoting *Redmond v. Kosinski*, 999 F.3d 1116, 1120 (8th Cir. 2021)).  "Deliberate indifference is more than negligence, more even than gross negligence. It may be found where medical care is so inappropriate as to evidence intentional maltreatment." *Id.* (quoting *Presson v. Reed*, 65 F.4th 357, 366 (8th Cir. 2023)).  "The level of culpability required to demonstrate deliberate indifference on the part of prison officials is equal to criminal recklessness."  *Id.* (quoting *Holden v. Hirner*, 663 F.3d 336, 343 (8th Cir. 2011)).

When a prisoner "alleges that a *delay* in medical treatment constituted a constitutional deprivation, the objective seriousness of the deprivation *should also* be measured by reference to the effect of delay in treatment."  *Id.* at 843 (quoting *Cheeks*, 80 F.4th at 878) (emphasis in original).  The "Constitution does not require [prison officials] to handle every medical complaint as quickly as each inmate might wish."  *Jenkins v. Cnty. of Hennepin*, 557 F.3d 628, 633 (8th Cir. 2009); *see also Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006) (finding that a one-month delay in x-raying a fractured finger was not a constitutional violation); *Logan v. Clarke*, 119 F.3d 647, 650 (8th Cir. 1997) (finding the same regarding an under-three-month delay in seeing a dermatologist for a skin infection).

Cochran's complaint contains no facts that would state a plausible deliberate-indifference claim against either Defendant.  As quoted above, Cochran asserts that he did not receive certain supplies, medications, and a medical appointment, and blames that solely on the "[f]ailure of the MEDICAL DEPARTMENT."  Doc. 1 at 4.  The complaint simply contains no facts that would show that either defendant actually knew of a serious medical need but deliberately disregarded it or would continue to disregard it.  Nor does he allege any facts that would rise to the level of criminal recklessness or intentional maltreatment.  *See Jenkins*, 557 F.3d at 632.

Based on Cochran's Civil Action Complaint, Exhibit, and additional filings, Cochran's deliberate-indifference claims are premised upon delays in his receipt of certain medical supplies, prescriptions, and medical appointments.  *See* docs. 1, 1-1, 10–12.  In Issue One of his complaint, he alleges the failure of the medical department to provide him feeding tubes.  Doc. 1 at 4.  But Cochran never missed a feeding, and the smaller syringes he temporarily received ensured continued feeding until the prison provided him with his requested syringe.  Doc. 1-1 at 3, 6.

Issue Two in Cochran's complaint alleges a failure to provide him with the prescribed medication Prilosec, doc. 1 at 4, but his medication provider renewed his medication after 10 days of receiving his request, doc. 1-1 at 7–8, 11.  In Issue Three, Cochran alleges that the Medical Department failed to schedule and plan follow-up appointments with his cancer doctor.  Doc. 1 at 4.  However, the Exhibit and Cochran's supplemental filings reveal that Cochran had multiple follow-up appointments.  Doc. 1-1 at 13, 16; doc. 11.  In his December 2 filing, Cochran admits receiving treatment from the emergency room because his feeding tube clogged, and he speculates that this situation would not have occurred if Cochran had seen his doctor sooner.  Doc. 11.

Issue Four concerns Cochran's receipt of sterile water for his tube feedings. Doc. 1 at 4; doc. 1-1 at 17. One week after Cochran's IRR on this issue, doc. 1-1 at 17, a nurse practitioner ordered Cochran sterile water, *id.* at 18, 21. And Issue Five concerns a delay in Cochran's receipt of "Chlorhexidine Glue." Doc. 1 at 4. Cochran received a refill of that medication within ten days of Cochran's IRR on this issue, however. *See* doc. 1-1 at 22–23. In his October 2 filing, Cochran claims he went without Chlorhexidine for 2 weeks and had to wait a few hours for a nurse to apply ointment when he experienced instances of bleeding and drainage around his feeding tube. Doc. 10.

Based on his allegations, it appears Cochran believes that his constitutional rights are violated any time a form of medical care is not provided when he wants it. But he provides no evidence that the delay caused "(1) an objectively serious medical need, and (2) that the defendant[s] knew of and disregarded that need." *Dantzler*, 133 F.4th at 843; *see also Jenkins*, 557 F.3d at 633. Some of Cochran's allegations might describe negligence, and he uses that word when asserting his claims. Doc. 1 at 4. But "[d]eliberate indifference is more than negligence, more even than gross negligence. It may be found where medical care is so inappropriate as to evidence intentional maltreatment." *Dantzler*, 133 F.4th at 843.

Finally, in Cochran's December 23, 2025 filing, the Court finds it is unclear what type of claim, if any, Cochran attempts to assert. Doc. 12. He states he initiated a new prison grievance to complain about the restraints used during transport to medical appointments and to request accommodation, but he mentions neither defendant, and he fails to explain what his Eighth Amendment claim is. *See id.*

In sum, the Court finds that Cochran has failed to state a plausible Eighth Amendment violation. His official-capacity claims against Zamora and the warden therefore fail as a matter

12

of law.  *See Jackson v. Buckman*, 756 F.3d 1060, 1067 n.3 (8th Cir. 2014) (noting that "[a]bsent an underlying constitutional violation, [a prisoner's] official-capacity . . . claims . . . necessarily fail").

**C.**      **Eighth Amendment claim against Zamora in an individual capacity**

As explained, the Court finds that, liberally construed, Cochran may attempt to assert individual-capacity claims against Zamora.  To state a claim under 42 U.S.C. § 1983, a plaintiff must establish:  (1) "the violation of a right secured by the Constitution or laws of the United States," and that (2) "the alleged deprivation" of that right was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988) (citation omitted).  The doctrine of respondeat superior does not apply to section 1983 cases, but a defendant with a supervisory role may be liable if her direct action or "failure to properly supervise and train the offending employee" caused the constitutional violation at issue.  *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001) (citation omitted).

As explained, Cochran does not allege facts that would establish a constitutional violation.  He is therefore missing an essential element of a section 1983 claim.  *See West*, 487 U.S. at 48.  Even if Cochran did establish a constitutional violation, his individual-capacity claims against Zamora would fail.  Section "1983 liability is personal."  *White v. Jackson*, 865 F.3d 1064, 1080 (8th Cir. 2017) (citing *Doran v. Eckold*, 409 F.3d 958, 965 (8th Cir. 2005) (en banc)).  "To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation."  *Id.* (citation omitted); *see also Dahl v. Weber*, 580 F.3d 730, 733 (8th Cir. 2009) (noting that a plaintiff "must establish that [the defendant] was personally involved in, or directly responsible for" the plaintiff's harm).

13

Cochran does not mention Zamora when setting forth his claims for relief, much less plead facts that would show she was directly involved in any allegedly unconstitutional conduct, failed to train or supervise any employee, or created, applied, or interpreted any policy that gave rise to allegedly unconstitutional conditions.  And insofar as Cochran claims Zamora failed to adequately address his claims when he presented them through the prison-grievance procedure, such allegations do not state a claim of constitutional dimension.  *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (noting that the prison grievance procedure is a procedural right only, and does not confer a substantive right).

## IV.     Conclusion

Accordingly, the Court dismisses this action pursuant to 28 U.S.C. § 1915A(b)(1).  The Court declines to exercise supplemental jurisdiction over any state-law claims Cochran brings. Doc. 1 at 5–6 (referencing the Missouri constitution and state law); *see Reeve v. Oliver*, 41 F.3d 381, 383 (8th Cir. 1994) ("In the absence of a federal claim, the district court could not exercise supplemental jurisdiction and properly dismissed [the plaintiff's] remaining state law claims."). Because the Court dismisses this action without further proceedings, the Court denies as moot Cochran's [9] motion for appointment of counsel, and [13] motion seeking injunctive relief.  A separate order of dismissal accompanies this Memorandum and Order.  The Court certifies that an appeal from this dismissal would not be taken in good faith.

So ordered this 10th day of July 2026.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE